**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANDRE LAMONT CROMWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 11-68 |
| v. | ) | |
| | ) | |
| JOHN HANCOCK, Detective for the City of | ) | |
| Washington Police Department, JAMES | ) | Chief District Judge Conti |
| MARKLEY, Officer for the City of | ) | Chief Magistrate Judge Lenihan |
| Washington Police Department, THE CITY | ) | |
| OF WASHINGTON, PENNSYLVANIA; | ) | |
| CITY OF WASHINGTON POLICE | ) | |
| DEPARTMENT, | ) | |
| | ) | ECF No. 49 |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I.  RECOMMENDATION

It is respectfully recommended that the Motion to Dismiss for Failure to State a Claim

filed by Defendants John Hancock, James Markley, the City of Washington, and the City of

Washington's Police Department be granted.

### II.  REPORT

#### A.  Factual Averments

Plaintiff Andre Lamont Cromwell ("Plaintiff" or "Cromwell"), proceeding pro se, filed

the above captioned case pursuant to 42 U.S.C. § 1983.  Plaintiff names John Hancock, detective

for the City of Washington Police Department ("Detective Hancock"), and James Markley,

Officer for the City of Washington Police Department ("Officer Markley") (collectively

"individual Defendants"), in both their personal and official capacities.  (Amended Complaint,

ECF No. 40 at ¶ 8.)  Plaintiff also names the City of Washington, Pennsylvania ("the City"), and the City of Washington Police Department ("WPD") (collectively "municipal Defendants").

Plaintiff sets forth the following detailed averments.  On December 30, 2009 at 10:20 p.m., Plaintiff arrived at Chicken Charlie's parking lot, a six pack beer store, in Washington, Pennsylvania.  (ECF No. 40 at ¶ 9.1; Plaintiff's Memorandum in Opposition to Motion to Dismiss, ECF No. 55 at 2.)  Plaintiff exited the rear driver's side door of the vehicle.  (ECF No. 40 at ¶ 9.2.)  The driver of the vehicle and the front seat passenger were females under the age of 21.  (ECF No. 40 at ¶ 9.19.)  Plaintiff entered Chicken Charlie's and purchased two (2) cans of beer for himself and four (4) bottles of malt liquor for two other persons.  (ECF No. 40 at ¶ 9.3.)  Plaintiff then exited the store.  Although it was the end of December, he wore flip flops on his feet and no coat or jacket.  Plaintiff was returning to the vehicle when he was approached by Detective Hancock and Officer Markley.  Both Detective Hancock and Officer Markley were dressed in civilian clothes while working an undercover detail relating to the furnishing of alcohol to minors and underage drinking.  (ECF No. 40 at ¶ 9.4.)  Detective Hancock stated that he needed to talk to Plaintiff, and in a normal tone of voice Plaintiff stated "F_ _ _ out of here, I aint[sic] with that."  Plaintiff then opened the rear driver's side door and attempted to reenter the vehicle.  (ECF No. 40 at ¶ 9.5.)  Both Officer Markley and Detective Hancock ordered Plaintiff not to enter the vehicle and positioned themselves so that Plaintiff could not close the vehicle door.  (ECF No. 40 at ¶ 9.6.)  They indicated to Plaintiff that they only needed to talk to him, but at the same time, were pulling Plaintiff out of the vehicle and bending his arms up towards his upper back causing severe pain.  (ECF No. 40 at ¶ 9.7.)  At this point, Plaintiff did not understand what was going on and attempted to pull his arms back down to a more comfortable position and asked what this was all about.  (ECF No. 40 at ¶ 9.8.)  Plaintiff alleges that he was

then slammed onto the ground by both Detective Hancock and Officer Markley, causing Plaintiff to strike the left side of his face on the snowy and icy concrete. (ECF No. 40 at ¶ 9.9.) Plaintiff was then handcuffed, and forced to walk in the ice and snow in his stocking feet because his flip flops came off when he was forced to the ground. (ECF No. 40 at ¶ 9.10.)

At this time, other police officers arrived on the scene and Plaintiff was placed in the back of one of the police cruisers. (ECF No. 40 at ¶ 9.11.) Detective Hancock and Officer Markley then removed the females from the vehicle, searched them, searched the back seat area of the vehicle, and then placed the females inside a separate police cruiser. (ECF No. 40 at ¶ 9.12.) Plaintiff then observed another police officer of the WPD, Sergeant Bradley, enter the front passenger door of the vehicle and then exit with a bag of crack cocaine. (ECF No. 40 at ¶ 9.13.) Detective Hancock then took the crack cocaine and yelled to Plaintiff that he was going back to prison; Plaintiff responded that the crack cocaine was not his. Plaintiff alleges that Detective Hancock responded: "It is now!" (ECF No. 40 at ¶ 9.14.)

Plaintiff was then taken to the police station and again forced to walk in his stocking feet in the ice and snow upon exiting the police cruiser. (ECF No. 40 at ¶ 9.15.) Plaintiff was charged with Resisting Arrest[1], Furnishing Alcohol to Minors[2], Possession with Intent to Distribute a Controlled Substance[3], and Possession of Drug Paraphernalia[4] based upon a criminal complaint filed by Detective Hancock that same evening. (ECF No. 40 at ¶ 9.16.)

Next, Plaintiff was taken to his preliminary arraignment wherein Detective Hancock stated the following to Plaintiff: "We know every time we arrest you, we have to worry about you filing lawsuits. I'm not worried about you filing one now, or about the one you have

---

[1] 18 Pa. Cons. Stat. Ann. § 5104.
[2] 18 Pa. Cons. Stat. Ann. § 6301(a)(1).
[3] 35 P.S. § 780-113(a)(30).
[4] 35 P.S. § 780-113(a)(32).

pending because it aint[sic] no money out of my pocket." (ECF No. 40 at ¶ 9.17.)  Again, when

Plaintiff arrived at the office of the district justice, he was forced to walk in his stocking feet in

the ice and snow.  (ECF No. 40 at ¶ 9.18.)  At the preliminary arraignment, the district justice

issued an arrest warrant based on an affidavit of probable cause prepared by Detective Hancock.

Plaintiff quotes the relevant portion of the affidavit as follows:

> On December 30, 2009 at approx. 22:20 hrs, your affiant along
> with officer James Markley of the City of Washington police
> department were working a plain clothes detail in the area of
> Chicken Charlie's located at 501 Jefferson Avenue.  Officers
> observed a white 1992 Pontiac pull into the parking lot occupied
> by 19 year old Natasha Wietrzykowski, 18 year old Latia Carter
> and the Defendant who is known to this officer.  Officers observed
> the Defendant enter Chicken Charlie's while the females waited in
> the vehicle.  The Defendant then exited the business with a bag
> containing multiple bottles of colt 45 malt liquor at which time he
> attempted to get into the back seat of the underage females[sic]
> vehicle.  At this point officers identified ourselves and made
> contact with the Defendant.  The Defendant refused our orders to
> stay out of the vehicle and had to be physically restrained.  As
> officers were attempting to restrain[,] the Defendant continued to
> resist and pull away at which time he threw a plastic bag
> containing a large amount of suspected crack cocaine into the front
> of the vehicle.  At one point during the struggle[,] the Defendant
> had to be forced to the ground causing injury to this officer's right
> hand.  During a search incident to arrest, officers discovered a
> digital scale used for weighing cocaine and $453 in U.S. currency.

(ECF No. 40 at ¶ 9.19.)

Plaintiff alleges that on February 2, 2010, just before his preliminary hearing, Plaintiff

was informed by his attorney that he and the assistant district attorney agreed that the charges

should be dismissed because of "a substantive and prejudicial defect[] on the face of the criminal

complaint." (ECF No. 40 at ¶ 9.20.)  At the preliminary hearing, only Detective Hancock

testified on behalf of the Commonwealth.  Plaintiff avers that Detective Hancock fabricated

evidence when he testified as follows:

> that [he and Officer Markley] observed the plaintiff purchase the
> alcohol, [t]hat when the plaintiff exited the store that he (defendant
> Hancock) approached the plaintiff with the intentions of stopping
> the plaintiff for investigation, at which time he (defendant
> Hancock) alleged that the plaintiff repeatedly shouted obscenities
> at the defendants[] [H]ancock and Markley and that the
> defendants[] [H]ancock and [M]arkley had safety concerns.

(ECF No. 40 at ¶ 9.23.)  Plaintiff alleges that prior to the conclusion of the preliminary hearing,

his attorney timely motioned for a dismissal of all charges, "based on the substantive and

prejudicial defect on the face of the criminal complaint[']s affidavit of probable cause."  (ECF

No. 40 at ¶ 9.24.)  The motion was denied and all charges were held for trial.  (ECF No. 40 at ¶

9.24.)

On July 27, 2010, Plaintiff's motions for a writ of habeas corpus and for suppression of

evidence were denied; Plaintiff alleges that the Court's written opinion denying the motions

relied heavily on Detective Hancock's allegedly fabricated preliminary hearing testimony.  (ECF

No. 40 at ¶ 9.27.)  Plaintiff further alleges that due to procedural missteps of his attorney, his

motions for reconsideration and interlocutory appeal were denied.[5]  (ECF No. 40 at ¶ 9.28.)

On March 7, 2011, Plaintiff's case proceeded to a jury trial.  Plaintiff alleges that

Detective Hancock fabricated the following evidence:

> [T]hat he observed the plaintiff checking out the alcohol at the
> counter, that the defendants[] Hancock and [M]arkley did not
> approach the females while plaintiff was still inside the store
> because they (the defendants[] [H]ancock and [M]arkley) did not
> know if the plaintiff would exit the store and walk back to the
> vehicle.  [][T]hat when the plaintiff exited the store the defendant
> [H]ancock approached the plaintiff for investigation and that the
> plaintiff became irrational and started walking faster, that the
> defendant [H]ancock recovered the drugs himself from the vehicle,
> that the defendant [H]ancock's decision to restrain, handcuff and

---

[5] Defendants state that on information and belief, the procedural missteps of Plaintiff's attorney refer to the fact that "the trial court certified the suppression for appeal to the Superior Court, but that the Superior Court declined to hear the appeal at that time."  (ECF No. 50 at 5 n.2.)

take the plaintiff into custody did not come about until after the plaintiff allegedly threw the drugs, that the plaintiff came out of the vehicle and the defendant [H]ancock kept explaining "Andre just relax, it's not a big deal," that the defendants[] [H]ancock and Markley had safety concerns because of plaintiff's alleged violent history, [t]hat the defendant [H]ancock was going to warn the plaintiff that the females were underage and that the defendant [H]ancock and SGT Bradley were both standing at the window looking at the package of drugs inside the vehicle.

(ECF No. 40 at ¶ 9.29-9.30.) Plaintiff further alleges that Officer Markley fabricated evidence at Plaintiff's jury trial when he testified that the Plaintiff "quickly jumped into the vehicle and started moving around." (ECF No. 40 at ¶ 9.31.)

During the first day of trial, the court dismissed the furnishing alcohol to minors charge. On March 8, 2011, however, the Plaintiff was found guilty of all remaining charges. (ECF No. 40 at ¶ 9.32.) On May 10, 2011, Plaintiff was sentenced to 5 to 10 years plus 3 years of probation. (ECF No. 40 at ¶ 9.33.) On May 19, 2011, counsel for Plaintiff filed post sentence motions, which were denied on June 13, 2011. (ECF No. 40 at ¶ 9.34.)

On June 11, 2012, Plaintiff's conviction was reversed by the Pennsylvania Superior Court, indicating that Detective Hancock and Officer Markley lacked reasonable suspicion and probable cause. (ECF No. 40 at ¶ 9.36.)

Here, as to the individual Defendants, Plaintiff attempts to make out the following claims: harassment, perjury, manufacture of evidence, excessive force, assault and battery, unlawful arrest, unlawful detention, illegal detention, false arrest, false imprisonment, invasion of privacy, violation of due process, right to a fair trial, official oppression, malicious prosecution, intentional infliction of emotional distress, intentional willful misconduct, obstruction of justice, and conspiracy. (ECF No. 40 at ¶¶ 4-5.) As to Detective Hancock only, Plaintiff also adds the claim of "prejudicial defects and omissions in affidavit of probable cause."

(ECF No. 40 at ¶ 4.)  Plaintiff invokes the protections of the Fourth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and Article 1 § 8 of the Pennsylvania Constitution.  (ECF No. 40 at ¶ 10.)  As to the WPD, Plaintiff avers a failure to train Detective Hancock and Officer Markley in that the WPD has a custom and pattern of unlawful arrest against this Plaintiff because he was unlawfully arrested by the WPD in January 1999.  (ECF No. 40 at ¶ 6.)  As to the City of Washington, Plaintiff avers that it is responsible for the overall operations of the WPD.  (ECF No. 40 at ¶ 7.)  Plaintiff seeks "money damages" against each defendant in the amount of $200 million dollars, and punitive damages against each defendant in the amount of $200 million dollars.  (ECF No. 40 at ¶¶ 14-15.)

B.  Legal Standards

PRO SE PLEADINGS

The Court must liberally construe the factual allegations of Plaintiff's Complaint because pro se pleadings, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  That is, the court should "'apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name.'"  *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veterans Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999)).  Finally, Federal Rule of Civil Procedure 8(e) requires that all pleadings be construed "so as to do justice."  Fed. R. Civ. P. 8(e).

MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly* at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id*. (citing *Twombly* at 556-57). The court of appeals has expounded on this standard in light of its decision in *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and the Supreme Court's recent decision in *Iqbal*:

> After *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. See Id. at 1949-50; see also *Twombly*, 505 U.S. at 555, & n. 3.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In light of *Iqbal*, the *Fowler* court then set forth a two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim. First, the district court must accept all well-pleaded facts as true and discard any legal conclusions contained in the complaint. *Fowler*, 578 F.3d at 210-11.

Next, the court must consider whether the facts alleged in the Complaint sufficiently demonstrate that the plaintiff has a "plausible claim for relief." *Id*. at 211. To survive a motion to dismiss, a complaint must show an entitlement to relief through its facts. *Id*. (citing *Phillips* at 234-35).

Courts generally consider only the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). Factual allegations within documents described or identified in the complaint may also be considered if the plaintiff's claims are based upon those documents. *Id*. A district court may consider these documents without converting a motion to dismiss into a motion for summary judgment. *In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1426 (3d Cir. 1997).

C. Analysis

1. Plaintiff's § 1983 Claims and Qualified Immunity

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To state a claim for relief under this provision, a plaintiff must demonstrate that the conduct in the complaint was committed by a person or entity acting under color of state law and that such conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States. *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a

remedy for violations of those rights created by the United States Constitution or federal law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

      a.   <u>False Arrest, False Imprisonment, Malicious Prosecution</u>[6]

The Fourth Amendment's prohibition against unreasonable seizures protects individuals from arrest without probable cause. *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995) (citing *Papachristou v. City of Jacksonville*, 405 U.S. 156, 169 (1972)). "Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). The law of the state where the arrest occurred controls whether the arrest is valid. *Myers*, 308 F.3d at 255 (citing *Ker v. California*, 374 U.S. 23, 37 (1963)). In determining whether probable cause exists to support an arrest, the analysis must be based upon the totality of circumstances including "the objective facts available to the officers at the time of the arrest." *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997) (citing *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983)). Subjective intentions of police officers are irrelevant to a Fourth Amendment probable cause analysis. *Whren v. United States*, 517 U.S. 806, 813 (1996).

Similarly, to state a claim for false imprisonment, a plaintiff must establish that he was detained, and that the detention was unlawful. *James v. City of Wilkes-Barre*, 700 F.3d 675, 682-83 (3d Cir. 2012). That is, "where the police lack probable cause to make an arrest, the arrestee

---

[6] Broadly construing Plaintiff's Amended Complaint at ECF No. 40, the Court analyzes Plaintiff's claims of unlawful arrest, unlawful detention, and illegal detention as being subsumed by these § 1983 claims.

has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995).

In order to establish a Fourth Amendment malicious prosecution claim pursuant to § 1983, a plaintiff must show the following: 1) the defendant initiated a criminal proceeding; 2) the criminal proceeding ended in the plaintiff's favor; 3) the proceeding was initiated without probable cause; 4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and 5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).[7]

With regard to these § 1983 claims against the individual Defendants in their personal capacities, Defendants Hancock and Markley argue that they are entitled to qualified immunity based upon the detailed allegations of the Amended Complaint at ECF No. 40. Specifically, the individual Defendants contend that their actions were at all times objectively reasonable, as reflected by Plaintiff's allegations that "others, including the underlying trial judge, concluded that the officers' actions were justified under the law." (ECF No. 50 at 6-7.) Defendants note that even if a mistake were made as to reasonable suspicion and/or probable cause, they are still protected by qualified immunity which "'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" (ECF No. 50 at 7 (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).)

State officials performing discretionary acts enjoy "qualified immunity" from money damages in § 1983 causes of action when their conduct does not violate "clearly established"

---

[7] The elements of a state law claim for malicious prosecution are the same but for the fifth element, which is not required to make out a claim for malicious prosecution under Pennsylvania state law. *Kossler v. Crisanti*, 564 F.3d 181, 186 n.2 (3d Cir. 2009) (citing *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791 (3d Cir. 2000)).

statutory or constitutional rights of which a "reasonable person" would have known at the time the incident occurred. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The first inquiry under a qualified immunity analysis is whether the plaintiff has established a violation of a "clearly established constitutional right" as follows:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citations omitted).

The second inquiry concerns the reasonableness of the defendant's actions. The test for qualified immunity is based on objective reasonableness, that is, "whether a reasonable officer could have believed [the challenged action] to be lawful, in light of clearly established law and the information the [ ] officers possessed." *Giuffre v. Bissell*, 31 F.3d 1241, 1255 (3d Cir. 1994) (quoting *Anderson,* 483 U.S. at 641). "The ultimate issue is whether, despite the absence of a case applying established principles to the same facts, reasonable officers in the defendants' position at the relevant time could have believed, in light of what was in the decided case law, that their conduct was lawful." *Giuffre*, 31 F.3d at 1255 (internal quotation omitted). It is the defendant's burden to establish that they are entitled to qualified immunity. *See Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 726 (3d Cir. 1989).

In *Saucier v. Katz,* 533 U.S. 194 (2001), the United States Supreme Court clarified the two-step qualified immunity inquiry. The Court directed that, in deciding whether a defendant is protected by qualified immunity, a court first must determine whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct

violated a constitutional right." *Id*. at 201. If the facts do not establish the violation of a constitutional right, no further inquiry concerning qualified immunity is necessary. *Id*. If the plaintiff's factual allegations do show a violation of his rights, then the court must proceed to determine whether the right was "clearly established," that is, whether the contours of the right were already delineated with sufficient clarity to make a reasonable officer in the defendant's circumstances aware that what he was doing violated the right. *Id*. at 201-02. Finally, in *Pearson v. Callahan*, 555 U.S. 223 (2009), the United States Supreme Court concluded that while the two-step sequence identified in *Saucier* "is often appropriate, it should no longer be regarded as mandatory." *Id*. at 236.

Here, affording the pro se Plaintiff a very broad reading of the Amended Complaint, he appears to allege violations of his constitutional protections against false arrest, false imprisonment, and malicious prosecution. The key inquiry for purposes of qualified immunity here, and certainly the most efficient means of employing the analysis on these facts, is to determine whether the conduct of these Defendants was objectively reasonable as to the existence of probable cause, the element that these § 1983 claims have in common. Certainly, because the Pennsylvania Superior Court reversed Plaintiff's conviction on appeal finding that Detective Hancock and Officer Markley lacked reasonable suspicion and probable cause (ECF No. 40 at ¶ 9.36), the Court proceeds directly to the issue of whether the individual Defendants made a reasonable mistake as to the lawfulness of their actions. That is, as established in *Pearson*, the Court considers whether reasonable officers in Defendants' position could have believed that their conduct comported with established legal standards. 555 U.S. at 236.

First, the Officers approached Plaintiff to conduct an investigative detention concerning their suspicions that Plaintiff was furnishing alcohol to minors. "[W]here a police officer

observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot[,]" he may make reasonable inquiries. *See Terry v. Ohio*, 392 U.S. 1, 30 (1968). "[A]n investigative detention must be temporary and last no longer that is necessary to effectuate the purpose of the stop . . . ." *Florida v. Royer*, 460 U.S. 491, 500 (1983). Here, a reasonable officer faced with these unfolding facts could have believed that the inquiries concerning Plaintiff's purchase of a large quantity of alcohol comported with the requirements of a *Terry* stop, especially when Plaintiff returned with the alcohol to the vehicle where the underage females were waiting. More importantly, immediately upon making the initial inquiry, Plaintiff responded with an obscenity, refusing the Defendants' repeated requests, and walking to the vehicle in an attempt to quickly reenter. The circumstances continued to unfold until Plaintiff was struggling to remain in the vehicle. At this point, drawing on his past experience with Plaintiff as averred in the Amended Complaint, a reasonable officer in Detective Hancock's position could conclude that criminal activity may be afoot. *Terry*, 392 U.S. at 30.

Further, Plaintiff's allegations could establish probable cause for Plaintiff's arrest on the charges of resisting arrest,[8] possession with intent to distribute crack cocaine,[9] and possession of drug paraphernalia[10] to reasonable officers in the position of Defendants. Under the second step

---

[8] 18 Pa. C.S. §5104 defines Resisting Arrest as follows:
> A persons commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

[9] 35 P.S. § 780-113(a)(30) defines Possession with Intent to Distribute as follows:
> (a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:
> (30) Except as authorized by this act, . . . possession with intent to . . . deliver[] a controlled substance by a person not registered under this act, or a practitioner not registered . . . .

[10] 35 P.S. § 780-113(a)(32) defines Possession of Drug Paraphernalia as follows:
> (a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

of the qualified immunity analysis, the Defendants are entitled to qualified immunity unless it would have been clear to a reasonable officer that there was no probable cause to make the arrest on at least one of these charges. *See Shelley v. Wilson*, 339 F. App'x 136, 139 n.4 (3d Cir. 2009) (quoting *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994)) ("[W]hen an arrest is made on more than one charge, '[p]robable cause need only exist as to any offense that could be charged under the circumstances.'"). Here, Plaintiff's allegations indicate that in response to the officers' investigative detention, Plaintiff responded with obscene language and would not speak to the officers. Plaintiff further avers that he would not follow the officers' directions to not reenter the vehicle. Plaintiff avers that, instead, he resisted the officers, pulled away, and eventually was pulled to the ground as a result of resisting their orders. Plaintiff continues that, thereafter, the officers discovered the bag of crack-cocaine in the vehicle. Further, Plaintiff's averments make clear that Plaintiff knew Detective Hancock because Plaintiff was the subject of past arrests, and that Detective Hancock knew that Plaintiff had been in prison before the encounter at Chicken Charlie's. Hence, a reasonable officer in the position of the individual Defendants could have believed that probable cause existed.

Relatedly, the averments of the Amended Complaint establish that the actions of the Officers were a reasonable mistake; that is, reasonable minds could disagree as to the lawfulness of the Defendant officers' actions. Specifically, the issue of the lawfulness of the individual Defendants' actions was considered numerous times during the course of the state court criminal proceedings. First, the district justice considered the affidavit of probable cause at the preliminary arraignment. Next, at the preliminary hearing, all charges, including the furnishing

---

(32) The use of, or possession with intent to use, drug paraphernalia for the purpose of . . . propagating, . . . packing, repacking, storing, containing . . . a controlled substance in violation of this act.

alcohol to minors charge, were held for trial.  Thereafter, the trial court denied Plaintiff's

suppression motion.  Subsequently, the trial court denied Plaintiff's motion for reconsideration of

the suppression motion.  The Plaintiff was eventually convicted of all charges by a jury except

for the furnishing alcohol to minors charge, which was dismissed by the trial court on the first

day of trial.  Plaintiff's post sentence motions were also denied by the trial court.  It was not until

the appeal to the Pennsylvania Superior Court, that the individual Defendants' actions were

found to be legally deficient.  As noted by the United States Court of Appeals for the Third

Circuit, "that there is more than one judicial view of [] conduct strongly suggests that qualified

immunity is appropriate here."  *Gilles v. Davis*, 427 F.3d 197, 206 (3d Cir. 2005) (court of

appeals discussing whether reasonable minds could differ as to whether speech was protected).

The disagreement between the Superior Court and the trial court on the issue of probable cause

and reasonable suspicion illustrates that reasonable minds could differ on the facts and

circumstances presented by the averments of Plaintiff's Amended Complaint.  Although the

Superior Court found that the individual Defendants lacked reasonable suspicion/probable cause,

the officers' civil liability pursuant to § 1983 does not necessarily follow.[11]  That is, police

officers are entitled to some deference for the split second decisions that they must make in the

field under a variety of rapidly evolving and uncertain circumstances.  *Saucier,* 533 U.S. at 204-

05 (discussing *Graham v. Connor*, 490 U.S. 386, 393-97 (1989)).  Therefore, the Court must

evaluate the reasonableness of the Defendant officers' beliefs "from that on-scene perspective,

---

[11] In his responsive brief at ECF No. 54 at 2, Plaintiff suggests that his § 1983 claims are supported by the Superior Court's finding that the individual Defendants lacked reasonable suspicion/probable cause.  Plaintiff's attempt to use offensive collateral estoppel must fail, however, because the individual Defendants were neither parties to the underlying criminal prosecution, nor are they considered to be in privity with the Commonwealth.  *See Poindexter v. Carroll*, No. 1:11-cv-667, 2013 WL 2351360, at *8 (M.D. Pa. May 23, 2013) ("A plaintiff in a federal civil rights action may not use collateral estoppel offensively against a defendant law enforcement officer because a defendant in a § 1983 action, sued in his individual capacity, is not considered to be in privity with the government in a prior criminal prosecution.") (citing *Smith v. Holtz*, 210 F.3d 186, 199 n.18 (3d Cir. 2000)).  *See also Padilla v. Miller*, 143 F. Supp.2d 456, 466 (M.D. Pa. 1999) (application of offensive collateral estoppel unfair to enforcement officer where officer did not control state court criminal prosecution).

not with the perfect vision of hindsight." *Giles*, 427 F.3d at 207 (citing *Saucier*, 533 U.S. at 204-05). Consequently, the individual Defendants are protected by qualified immunity as to Plaintiff's false arrest, false imprisonment, and malicious prosecution claims.

### b. Excessive Force[12]

As to Plaintiff's excessive force claim, a liberal reading of Plaintiff's Amended Complaint suggests that he complains of two separate circumstances as constituting excessive force. First, Plaintiff avers that the individual Defendants "slammed" him onto the ground when he resisted the officers' attempt to question him and follow their orders as Plaintiff was attempting to reenter the vehicle. Second, Plaintiff alleges that he was forced to walk in the ice and snow in his stocking feet because his flip flops came off when he was forced to the ground.

In order to make out a claim for excessive force as an unreasonable seizure under the Fourth Amendment, Plaintiff must show that a seizure occurred and that it was unreasonable. *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999) (alleged excessive force in course of arrest is analyzed under Fourth Amendment). Whether the use of force is objectively reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). In *Graham*, the United States Supreme Court cautioned that in applying the objective reasonableness test, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," will be deemed unreasonable. Instead, "[t]he calculus of

---

[12] Broadly construing Plaintiff's Amended Complaint at ECF No. 40, the Court analyzes Plaintiff's claim of intentional willful misconduct as being subsumed by his § 1983 excessive force claim.

reasonableness must embody allowance for the fact that 'police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.'" *Id.* at 396-97 (internal quotations and citation omitted). In addition, the United States Supreme Court has emphasized that each case alleging excessive force must be evaluated under the totality of circumstances. *Id.* at 397.

Here, the individual Defendants are entitled to qualified immunity on Plaintiff's excessive force claim. As to this claim, however, the Court considers the following prong of the two-step qualified immunity analysis first: "[t]aken in the light most favorable to the party asserting the injury, . . . [do] the facts alleged show the officer's conduct violated a constitutional right." *Saucier*, 533 U.S. at 201. If the facts do not establish the violation of the constitutional right in issue, no further inquiry is required, and qualified immunity will apply. *Id.* Taking all of Plaintiff's averments as true and affording him every favorable inference, Plaintiff has failed to state a claim for excessive force. Plaintiff was resisting the individual Defendants' attempt to question him about their reasonable suspicions that Plaintiff was supplying alcohol to underage persons in the vehicle. Further, Plaintiff was actively resisting the officers to the extent that he was struggling to remain in the vehicle. "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396 (citing *Terry,* 392 U.S. at 22-27).[13] Hence, qualified immunity will protect the Defendants from Plaintiff's excessive force claim.

---

[13] Plaintiff's judgment in choosing to wear flip flops in the December ice and snow cannot be attributed to the individual Defendants.

      c.  <u>Plaintiff's remaining § 1983 claims are unsupported by the averments of the</u>
          <u>Amended Complaint and will not defeat Defendants' claim of qualified</u>
          <u>immunity</u>

Affording Plaintiff the most liberal reading of his Amended Complaint, Plaintiff attempts to state claims for the following: perjury, manufacture of evidence, invasion of privacy, violation of due process right to a fair trial, official oppression, obstruction of justice, prejudicial defects and omissions in affidavit of probable cause, and conspiracy.

          i.   Misrepresentations and omissions in affidavit of probable cause

Plaintiff argues that the individual Defendants are not protected by qualified immunity because of misrepresentations and omissions in the affidavit of probable cause that prejudiced his entire case. Plaintiff sets forth the affidavit of probable cause at ECF No. 40 at ¶ 9.19. Plaintiff argues that the affidavit does not mention that the females appeared to be underage, that plaintiff was observed purchasing a large amount of beer which aroused the Defendants' suspicions, that Defendants approached Plaintiff for investigatory purposes based on their observations, or that Plaintiff repeatedly shouted profanity and was being arrested for that offense. (ECF No. 54 at 3.)

The United States Court of Appeals for the Third Circuit has indicated that a plaintiff must proffer evidence that an official recklessly disregarded the truth in his warrant application, and that a warrant application based on what an official should have told the judge would have lacked probable cause. *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000). As to omissions, the *Wilson* court noted that "omissions are made with reckless disregard if an officer withholds a fact in his ken that '[a]ny reasonable person would have known that this was the kind of thing the judge would wish to know.'" *Wilson*, 212 F.3d at 788 (quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993)).

Here, the statements in the affidavit of probable cause indicate that the females were underage, that the officers observed Plaintiff enter Chicken Charlie's and exit with multiple bottles of liquor and then attempt to reenter the back seat of the vehicle. The affidavit also indicates that Plaintiff refused their orders and had to be physically restrained. That is, there was nothing omitted from the affidavit that was materially different from that which was included. In addition, the detailed factual averments of Plaintiff's Amended Complaint demonstrate that the affidavit of probable cause contained nothing to suggest that Detective Hancock "'had serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" *Wilson,* 212 F.3d at 788 (quoting *United States v. Clapp*, 46 F.3d 795, 801 n.6 (8th Cir. 1995)). Further, an affidavit containing the omissions enumerated by Plaintiff would not have lacked probable cause. At best, Detective Hancock made a reasonable mistake concerning the contents of the affidavit and is protected by qualified immunity on this claim.

### ii. Perjury at the preliminary hearing and criminal jury trial

Plaintiff also avers that Detective Hancock fabricated evidence at the preliminary hearing when he testified that the officers observed Plaintiff purchase alcohol, the officers approached Plaintiff for investigation, that Plaintiff repeatedly shouted obscenities at the officers, and that the officers had safety concerns. The detailed averments of Plaintiff's Amended Complaint, however, confirm that Plaintiff did purchase the alcohol, was approached by the officers, spoke using profanity to the officers, and struggled after refusing the officers' orders. Further, Plaintiff avers that Detective Hancock and Officer Markley fabricated evidence during Plaintiff's criminal jury trial. The law is clear, however, that witnesses, including police officers, are absolutely immune from civil liability for claims based on their testimony. *See Briscoe v. LaHue*, 460 U.S.

325, 345-46 (1983) (holding that trial witnesses, including police officers, are absolutely immune from civil liability for claims based on their testimony); *Williams v. Hepting*, 844 F.2d 138, 141-43 (3d Cir. 1988) (doctrine of absolute witness immunity applies to testimony given at pre-trial hearings).  Hence, the averments of Plaintiff's Amended Complaint fail to support his claims based upon fabricated evidence at Plaintiff's preliminary hearing and jury trial as a matter of law, and the individual Defendants are protected by immunity.

### iii. Fourteenth Amendment due process right to a fair trial[14]

A liberal reading of Plaintiff's Amended Complaint suggests that he may be invoking his Fourteenth Amendment due process right to a fair trial.  In a detailed discussion of this constitutional claim, the court in *Whitely v. Allegheny County*, Civil Action No. 07-403, 2010 WL 892207, at *23-24 (W.D. Pa. March 9, 2010), indicated that the right to a fair trial includes the right to a trial free from fabricated or altered evidence.  Yet, Plaintiff avers that prior to the conclusion of his preliminary hearing, his attorney motioned for a dismissal of all charges, "based on the substantive and prejudicial defect on the face of the criminal complaint[']s affidavit of probable cause."  (ECF No. 40 at ¶ 9.24.)  The motion was denied and all charges were held for trial.  Indeed, the statements in the Affidavit of Probable Cause are supported by the averments of Plaintiff's Amended Complaint.  Absent some suggestion that Detective Hancock and Officer Markley made false or reckless statements, any reasonable mistake made by these Defendants will not defeat their claim for qualified immunity.

### iv. Conspiracy

---

[14] Broadly construing Plaintiff's Amended Complaint at ECF No. 40, the Court analyzes Plaintiff's claims of manufacture of evidence, official oppression, and obstruction of justice, as being subsumed by his Fourteenth Amendment due process right to a fair trial claim.

In order to make out a claim for conspiracy pursuant to 42 U.S.C. § 1983, a plaintiff must allege conspiracy with particularity even though a heightened pleading standard generally does not apply to civil rights actions against individual defendants. *Bieros v. Nicola*, 860 F. Supp. 223, 225 (E.D. Pa. 1994) (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993)). In light of *Twombly* and its progeny, there must be "'enough factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.'" *Great Western Mining & Mineral Co.,* 615 F.3d 159, 178 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556). *See also Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008) (conspiracy requires a meeting of the minds, or understanding, to conspire against plaintiff).

In the instant action, Plaintiff has failed to allege any facts that plausibly suggest a meeting of the minds between the individual Defendants. Hence, the averments of Plaintiff's Amended Complaint fail to support any claim for conspiracy as a matter of law, and the individual Defendants are protected by qualified immunity.

` After a careful reading of the detailed averments of the Amended Complaint, it is clear that any further attempt by Plaintiff to amend any of his claims would be futile as a matter of law.[15]


2. Municipal Liability

Plaintiff avers that the municipality "is responsible for the failure to properly train its officials [Detective] Hancock and [Officer] Markley, and has a custom and pattern of unlawful

---

[15] The United States Court of Appeals for the Third Circuit in *Phillips v. County of Allegheny* has ruled that if a district court is dismissing a claim pursuant to Fed. R. Civ. P. 12(b)(6) in a civil rights case, it must *sua sponte* "permit a curative amendment unless such an amendment would be inequitable or futile." 515 F.3d 224, 245 (3d Cir. 2008).

arrest made against [P]laintiff, as Plaintiff was unlawfully arrested by the [C]ity of [W]ashington's police department on January 26, 1999."  (ECF No. 40 at ¶ 6.)

In *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the United States Supreme Court held that municipalities and other local governmental units are "persons" subject to liability under 42 U.S.C. § 1983.  In so ruling, however, the Court declared that municipal liability may not be premised on the mere fact that the governmental unit employed the offending official, that is, through application of the doctrine of respondeat superior.  Instead, the Court concluded that a governmental unit may be liable under § 1983 only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  *Monell*, 436 U.S. at 694.  The "official policy" requirement distinguishes acts of the municipality from acts of employees of the municipality, thereby limiting liability to action for which the municipality is actually responsible.  *Id*.

In finding municipal liability pursuant to § 1983, the plaintiff must identify the policy, custom or practice of the municipal defendant that results in the constitutional violation.  *Id*. at 690-91.  A municipal policy is made when a decision-maker issues an official proclamation or decision.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986), *quoted in*, *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990).  A custom or practice, however, may consist of a course of conduct so permanent and widespread that it has the force of law.  *Andrews*, 895 F.2d at 1480.  To establish municipal liability based upon a custom or practice, the plaintiff must demonstrate that the decision-maker had notice that a constitutional violation could occur and that the decision-maker acted with deliberate indifference to this risk.  *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000).  Finally, Plaintiff must show a causal connection between the custom or policy and the violation of the constitutional right.  *Bielevicz v. Dubinon*,

915 F.2d 845, 850-51 (3d Cir. 1990). That is, a plaintiff must demonstrate an "affirmative link" or "plausible nexus" between the custom or practice and the alleged constitutional deprivation. *Bielevicz*, 915 F.2d at 850-51.

The United States Court of Appeals for the Third Circuit has discussed a failure to train claim as follows:

> [A] municipality may be liable for the failure to train its employees only where that failure amounts to "deliberate indifference to the [constitutional] rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 389-90 (1989); *see also Woloszyn v. County of Lawrence*, 396 F.3d 314, 324 (3d Cir. 2005). In other words, a municipality can only be liable under § 1983 where the failure to train demonstrates a "deliberate" or "conscious" choice by the municipality. *Woloszyn*, 396 F.3d at 324 (citing *City of Canton*, 489 U.S. at 389. To determine whether a municipality's alleged failure to train its employees amounted to a deliberate or conscious choice, it must be shown that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) (citing *Walker v. N.Y.C.*, 974 F.2d 293, 297-98 (2d Cir. 1992)).

*Doe v. Luzerne County*, 660 F.3d 169, 179-80 (3d Cir. 2011). The specific deficiency of a municipality's training program must be closely related to the plaintiff's ultimate injuries. *Id.* (quoting *City of Canton*, 489 U.S. at 391). That is, the plaintiff must "prove that the deficiency in training actually caused [the constitutional violation at issue]." *Id.*

Here, Plaintiff's Amended Complaint fails to aver facts to state a plausible claim for failure to train against the City. Plaintiff has averred no facts to suggest how the City's training program was deficient relative to arrest. Plaintiff must aver, at a minimum, facts giving rise to an inference that specific inadequacies in existing training concerning arrests resulted in his injuries. Other than a general reference to his unlawful arrest in 1999, Plaintiff avers no facts to

show that the City had notice that its course of training was deficient as it related to arrests. *See Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) ("A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train.") (internal citations omitted). Instead, Plaintiff's averments cannot plausibly suggest, pursuant to *Twombly,* that any deliberate conduct of the City was the cause of his injuries. *See Twombly*, 550 U.S. at 556. Therefore, it is respectfully recommended that Plaintiff's municipal liability claim for failure to train be dismissed. Likewise, claims against the individual Defendants in their official capacities should be dismissed because official capacity claims are in essence claims against the municipality. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (official capacity suit is another way of pleading an action against the entity of which the officer is an agent). Any attempt to amend would be futile based on the facts as averred by Plaintiff.

3. Washington Police Department

Next, Defendants argue that the WPD is not a legal entity that may be sued as a matter of law. (ECF No. 50 at 15-16.) Here, Plaintiff sues the City of Washington as well as the City of Washington's Police Department. Specifically, Plaintiff avers that the City of Washington "is responsible for the overall operations of the [C]ity of [W]ashington's [p]olice department." (ECF No. 40 at ¶ 7.)

In *Golya v. Golya*, the district court noted that although the United States Court of Appeals for the Third Circuit has not issued a precedential opinion on this issue, other courts in this circuit have concluded that "a police department is merely a subunit of the local government and is not amenable to suit under § 1983." *Golya v. Golya*, No. 3:CV-05-0100, 2007 WL

2301085, at *9 (M.D. Pa. Aug. 9, 2007) (collecting cases), *cited in, Dicesare v. Office of Children, Youth & Families*, Civil Action No. 11-985, 2012 WL 2872811, at *3 (W.D. Pa. July 12, 2012). *See also Schor v. N. Braddock Borough*, 801 F. Supp.2d 369, 376 (W.D. Pa. 2011) ("It is well settled that a municipal police department is not a proper party in a suit in which the municipality itself is a party.") (citing *Johnson v. City of Erie*, 834 F. Supp. 873, 878-79 (W.D. Pa. 1993)); *PBA Local No. 38 v. Woodbridge Police Dept.*, 832 F. Supp. 808, 825-26 (D.N.J. 1993) ("The numerous courts that have considered the question of whether a municipal police department is a proper defendant in a § 1983 action have unanimously reached the conclusion that it is not.") (collecting cases).

Here, the City of Washington has also been named as a Defendant. Consequently, the Court respectfully recommends that Defendants' Motion to Dismiss on the issue of whether the WPD is a proper § 1983 defendant be granted. Any attempt to amend would be futile as a matter of law.

### 4. Pennsylvania Constitution

In Paragraph 11 of the Amended Complaint, Plaintiff avers that Defendants' actions also violated the Pennsylvania Constitution, and references Article 1 § 8. (ECF No. 40 at ¶ 11.) Defendants argue that this claim must be dismissed because there exists no direct cause of action for money damages for alleged violations of the Pennsylvania Constitution. (ECF No. 50 at 16.) After a thorough and detailed analysis, the Pennsylvania Commonwealth Court has concluded that "neither Pennsylvania statutory authority, nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution." *Jones v. City of*

*Philadelphia*, 890 A.2d 1188, 1208 (Pa. Cmwlth. 2006).  The *Jones* Court also noted the following:

> Neither have the federal courts recognized a civil cause of action for money damages under any provision of the Pennsylvania Constitution.  The federal courts have been reluctant to decide the "novel question" of whether a private cause of action exists for damages for violation of the Pennsylvania Constitution, believing that state courts are better equipped to determine which causes of action derive from our constitution.

*Jones*, 890 A.2d at 1209 n.33(collecting cases and indicating that majority of federal cases either fail to reach merits or decline to exercise jurisdiction), *cited in, Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 Fed. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution.").  This Court is likewise reluctant, and consequently, recommends, that Defendants' Motion to Dismiss as it relates to Plaintiff's claim pursuant to the Pennsylvania Constitution be granted.  Clearly, any attempt to amend this claim would be futile as a matter of law.

    5. Pennsylvania Political Subdivision Tort Claims Act

Defendants also argue that to the extent that Plaintiff attempts to aver state tort claims, they are protected by the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA").  Under the PSTCA, local agencies and their employees are given broad tort immunity.  The Act provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other son."  42 Pa. Cons. Stat. § 8541.  There are eight (8) specific acts excepted from this immunity that are not

applicable here.[16]  Municipal employees are generally immune from liability if the complained of

acts were committed within the scope of their employment.  42 Pa. Cons. Stat. § 8545.

Employees, however, are not immune from liability under § 8545 where their conduct amounts

to "actual malice" or "willful misconduct":

> In any action against a local agency or employee thereof for
> damages on account of an injury caused by the act of the employee
> in which it is judicially determined that the act of the employee
> caused the injury and that such act constituted a crime, actual
> fraud, actual malice or willful misconduct, the provisions of
> section [] 8545 . . . shall not apply.

42 Pa. Cons. Stat. § 8550.

The Court need not undertake this analysis, however, because it should dismiss all claims

over which it has original jurisdiction.  Therefore, in its discretion, the Court should decline to

exercise its supplemental jurisdiction over these state law claims.  Consequently, it is

respectfully recommended that the Court, in its discretion, refuse to exercise its supplemental

jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) over the remaining state law claims, and that

these claims be dismissed without prejudice to refiling the state law claims in state court.[17]


### III. CONCLUSION

For the above reasons, it is respectfully recommended that the Motion to Dismiss for

Failure to State a Claim filed by Defendants John Hancock, James Markley, the City of

Washington, and the City of Washington's Police Department be granted.

---

[16] 1) the operation of a motor vehicle in possession or control of a local agency; 2) the care, custody or control of personal property in the possession or control of a local agency; 3) the care, custody or control of real property; 4) a dangerous condition created by trees, traffic controls, or street lights; 5)a dangerous condition of utility service facilities; 6) a dangerous condition of streets; 7) a dangerous condition of sidewalks; 8) the care, custody, or control of animals in the possession or control of a local agency.  42 Pa. Cons. Stat. § 8542.

[17] The dismissal of the state law claims without prejudice should not work to Plaintiff's disadvantage in that 28 U.S.C. § 1367(d) provides for at least a 30-day tolling of any applicable statute of limitation so as to allow a plaintiff to refile state law claims in state court.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule of Court 72.D.2., the parties are allowed fourteen (14) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: November 1, 2013                                    BY THE COURT:

                                                           s/ Lisa Pupo Lenihan
                                                           LISA PUPO LENIHAN
                                                           Chief United States Magistrate Judge

cc:
        All Counsel of Record
        Via Electronic Mail

        Andre Lamont Cromwell
        305 South Trenton Avenue
        Apt. 2
        Wilkinsburg, PA  15221